Filed 2/18/21  P. v. Vallejo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074099 |
| v. | (Super.Ct.No. RIF103887) |
| FRANCISCO JAVIER VALLEJO et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge. Affirmed.

Boyce & Schaefer and Benjamin Kington, under appointment by the Court of Appeal for Defendant and Appellant Francisco Vallejo.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant Salomon Vallejo.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne McGinnis and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, defendants Francisco and Salomon Vallejo were convicted of two counts of attempted murder (Pen. Code, §§ 664 & 187, subd. (a))[1] with premeditation, and one count of discharging a firearm from a vehicle (§ 12034, subd. (c)), in addition to true findings on allegations that the crimes were committed for the benefit of a street gang (§ 186.22, subd. (b)), various gun discharge enhancements (§ 12022.53, subds. (c), (d), & (e)(1)) and a hate crime enhancement (§ 422.75, subd. (c)). They were each sentenced to an aggregate term of 50 years to life, and their convictions were affirmed on direct appeal. In 2019, following enactment of section 1170.95 pursuant to passage of Senate Bill No. 1437, each defendant filed a petition seeking resentencing. Both petitions were dismissed and both defendants appeal.

On appeal, defendants argue (1) the trial court's determination that section 1170.95 applies only to murder convictions was error, and (2) the exclusion of attempted murder from applicability of section 1170.95 violates equal protection principles. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

We summarize the facts of the incidents that led to the charges of which the two defendants were convicted from a portion of our prior opinion in the direct appeal.[2] (*People v. Vallejo, et al.*, (June 13, 2005, E034555) [nonpub. opn.] pp. 4-9.)

"A. Events Preceding the Charged Crimes

"The parties stipulated that at 4:20 p.m. on May 22, 2002, five gunshots were fired at the intersection of Ottawa and Enterprise in the City of Riverside. A witness saw a red older model small vehicle with a spoiler on the trunk chasing a Ford Explorer. A Hispanic male appearing to be in his 20's with a thin build was driving the red vehicle. An African-American male was driving the Explorer. Five 9-millimeter shell casings were found at the scene.

"At approximately 3:40 a.m. on May 26, 2002, 21-year-old Antwone Shaw was in his car delivering newspapers at Ottawa and Fourteenth Streets when he noticed an older black Acura Integra travel past him. Shaw spotted the Acura a second time on Ohio Street, located one block from Enterprise. As Shaw continued his route, he stopped at a stop sign at the intersection of Illinois and Ottawa. There, he saw the Acura a third time. The car was occupied by three individuals; the driver was a thin Hispanic male. The driver made a U-turn and pulled behind Shaw's car. Several gunshots rang out. One bullet penetrated Shaw's car and entered and exited Shaw's left calf.

---

[2] We omit additional facts in the interest of brevity.

"Ten 9-millimeter shell casings and one .45-caliber shell casing were found at the scene. The Acura was registered to Francisco, who was in county jail from May 24 to 29, 2002.

"At approximately 9:00 or 10:00 p.m. on May 30, 2002, a carload of individuals belonging to an African-American-based criminal street gang known as the 1200 Blocc Crips attempted to shoot a Hispanic male. Instead, they shot a four or five-year-old boy.

"At approximately 6:42 a.m. on May 31, 2002, a police officer was dispatched to the home of Lidia Vallejo, the mother of defendants Francisco and Salomon. Mrs. Vallejo reported that at approximately 1:00 a.m. she heard several gunshots, and then noticed that Francisco's black Acura Integra had been "shot up." There were four bullet holes on the passenger side of the Acura and one bullet hole through the front windshield. Mrs. Vallejo said that Francisco and Salomon were members of East Side Riva (ESR), a criminal street gang, and that she had not seen either of them for approximately three days.

"B. The Attempted Murder of Jason Green (Count 1)

"At approximately 8:00 a.m. on May 31, 2002, Jason Green, an African-American, was walking along Franklin Street in Riverside, headed to his uncle's house. Green was a former associate of the 1200 Blocc Crips but had never been a member of the gang. As Green walked past the intersection of Third and Franklin, he saw a red Nissan pickup truck, occupied by three Hispanic males, approaching from the opposite direction on Franklin Street.

4

"The Nissan pulled into a driveway directly across the street from Green's uncle's house. Two of the men got out of the Nissan from its passenger side, and walked across the street toward Green. The driver of the Nissan started backing it out of the driveway toward the middle of the street. When the two men reached the middle of the street and were approximately 10 to 15 feet from Green, one of the men said, "Fuck niggers" and "Fuck 1200 Blocc." Green continued to walk toward his uncle's house. The other man drew a .25-caliber handgun from his right pants pocket and fired five shots at Green. The third bullet grazed the side of Green's head. The rest of the bullets missed him.

"Green ran to his uncle's house and called 911. The two men got back in the Nissan, and the driver of the Nissan drove it down Franklin and turned onto Third toward Interstate 91. Police officers arrived at Green's uncle's house approximately three minutes after the shooting. Green was taken to a hospital and was released after three to four hours.

"During the afternoon of May 31, officers transported Green to two separate infield showups, where he identified Sanchez as the man who shot at him and Francisco as the man who uttered the racial slurs. Green was then taken to a third location, where he identified a red Nissan truck, registered to Francisco, as the vehicle involved in the shooting. Salomon was not present at either infield showup.

"At trial in August 2003, approximately 16 months after the shooting, Green again identified Sanchez as the man who shot him, but identified Salomon, not Francisco, as the man who uttered the racial slurs. On the day of the shooting, Green told an officer

5

that he did not get a good look at the driver.  At trial, Green testified that Francisco was the driver but said he was not certain.

"One witness testified that he saw 'the driver' and another man get in the Nissan after the shooting.  He described the driver as six feet two inches tall, heavyset, and weighing 200 pounds.  He did not get a good look at the second man.  Francisco is five feet eight inches tall and weighed 220 pounds at the time of the shooting.  Salomon is five feet seven inches tall and weighed 150 pounds at the time of the shooting.  Sanchez is five feet ten inches tall and weighed 140 pounds at the time of trial.

"C. The Attempted Murder of an Unidentified African-American Male (Counts 2 and 3)

"Less than one hour after the Green shooting, at approximately 8:45 a.m. on May 31, 2002, witnesses saw a red Nissan truck occupied by three Hispanic males approach the intersection of Iowa and Blaine in the City of Riverside.  Third Street turns into Blaine.  While the driver of the Nissan drove at a slow rate of speed, an individual in the passenger seat reached out of the truck and, holding a nine-millimeter gun in his right hand, fired six shots at an unidentified African-American teenager walking in the crosswalk of Blaine.  The Nissan then sped away.

"Witnesses were unable to provide descriptions of the shooter or the other two Hispanic males in the Nissan.  However, one witness said the shooter did not have any tattoos on his right arm.  Another witness wrote down part of the Nissan's license plate

6

number and gave it to police.  On the day of the shooting and at trial, this witness

identified Francisco's Nissan as the vehicle used in the shooting."

**DISCUSSION**

Defendants argue that section 1170.95, enacted pursuant to Senate Bill No. 1437,

applies to attempted murder convictions, and that if it does not, their rights to equal

protection under the law have been violated.  We disagree.

1.    *Section 1170.95 Does Not Apply to Attempted Murder Convictions.*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437, which was

enacted to "amend the felony murder rule and the natural and probable consequences

doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person

who is not the actual killer, did not act with the intent to kill, or was not a major

participant in the underlying felony who acted with reckless indifference to human life."

(Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Medrano* (2019) 42 Cal.App.5th 1001,

1009, review granted Mar. 11, 2020, S259948 (*Medrano*); *People v. Martinez* (2019) 31

Cal.App.5th 719, 723.)  This was done by amending sections 188 and 189.  (*Medrano,*

*supra.*)  It also added section 1170.95, which provides a procedure by which those

convicted of murder can seek retroactive relief if the changes in the law would affect

their previously sustained convictions.  (Stats. 2018, ch. 1015, §§ 2–4.)

The applicability of Senate Bill No. 1437 to the crime of attempted murder

presents an issue of statutory interpretation for our independent review.  (*People v. Larios*

(2019) 42 Cal.App.5th 956, 964-965, review granted Feb. 26, 2020, S259983 (*Larios*);

7

*Medrano, supra,* 42 Cal.App.5th at p. 1012, citing *People v. Tran* (2015) 61 Cal.4th 1160, 1166.) When determining the meaning of a statute, the first—and potentially last—place to look is its plain language. Section 1170.95 provides in relevant part: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).) The statute plainly refers to murder convictions, not convictions for attempted murder.

In determining whether Senate Bill No. 1437 applies to attempted murder convictions, the various Courts of Appeal have taken different approaches. (*People v. Love* (2020) 55 Cal.App.5th 273, 278-279, review granted Dec. 16, 2020, S265445 (*Love*).) Some courts have held that Senate Bill No. 1437 did not eliminate the natural and probable consequences theory for attempted murder at all—either prospectively or retroactively. (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1092–1093, review granted Nov. 13, 2019, S258175 (*Lopez*); *People v. Munoz* (2019) 39 Cal.App.5th 738, 754, review granted Nov. 26, 2019, S258234 (*Munoz*); *People v. Dennis* (2020) 47 Cal.App.5th 838, 841, review granted July 29, 2020, S262184 (*Dennis*); *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222.)[3]

---

[3] None of these pending cases has been depublished, but we question whether the natural and probable consequences has ever applied to convictions for attempted murder. Attempted murder requires a finding of specific intent to kill such that implied malice is insufficient to support a conviction for that offense. (See *People v. Swain* (1996) 12 Cal.4th 593, 605 [""""Specific intent to kill is a necessary element of attempted murder. It

*[footnote continued on next page]*

Other courts have held that Senate Bill No. 1437 eliminated the natural and probable consequences theory for attempted murder prospectively, but not retroactively. (*Larios, supra,* 42 Cal.App.5th at pp. 966, 969–970; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642, review granted June 10, 2020, S261768.)

Still another group has held that Senate Bill No. 1437 eliminated the natural and probable consequences theory for attempted murder prospectively and retroactively as to nonfinal convictions, but not retroactively as to final convictions. (*Medrano, supra,* 42 Cal.App.5th at pp. 1008, 1017–1019.) But few of these decisions address the differences in the mental states required for murder and attempted murder.

However, dealing strictly with the question of whether the Legislature ever intended for section 1170.95 to apply to attempted murder, we agree with the conclusion in *Love, supra,* that the statute plainly limits those who have standing to bring a motion for relief under its terms to persons convicted of murder, not attempted murder. (*Love, supra,* 55 Cal.App.5th at p. 279.)

The issue is currently pending in the California Supreme Court and will be resolved there. (*Lopez, supra*, 38 Cal.App.5th 1087, S258175, review granted Nov. 19, 2019.) In the meantime, several cases have reached the conclusion that section 1170.95 does not apply to attempted murder convictions. (See *Munoz, supra,* 39 Cal.App.5th at pp. 753-760, review granted Nov. 26, 2019, S258234; *Dennis*, supra, 47 Cal.App.5th 838,

must be proved, and it cannot be inferred merely from the commission of another dangerous crime." [Citation.]' [Citations.]".) In other words, the natural and probable consequences doctrine may apply to felony murder, but it is not properly applied to attempted murder.

9

review granted July 29, 2020, S262184; *Love*, *supra*, 55 Cal.App.5th 273, review granted Dec. 16, 2020, S265445.)  While the question is still pending, these cases were not depublished.

In our view, attempted murder was not affected by Senate Bill No. 1437 or section 1170.95 because any finding of specific intent to kill, which is not an element of felony murder or murder under a natural and probable consequences theory, necessarily precludes a conclusion that the convictions could have been based on either of those doctrines.

Therefore, denial of the petition on the ground that section 1170.95 does not apply to attempted murder was proper.

2.      *Our Resolution Does Not Implicate Defendants' Rights Under the Equal Protection Clause*.

Defendants also contend that their equal protection rights would be violated by permitting attempted murder convictions based on the natural and probable consequences doctrine to stand where murder convictions cannot.  We disagree.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally."  (*People v. Brown* (2012) 54 Cal.4th 314, 328, citing *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  "Accordingly, '"[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."'  [Citation.]"  (*People v.*

*Brown*, *supra*, 54 Cal.4th at p. 328.)  Here, both defendants were convicted of attempted murder, a different crime from murder, which carries a different punishment.  (*People v. Sanchez* (2020) 48 Cal.App.5th 914, 920 [persons convicted of voluntary manslaughter not similarly situated with persons convicted of murder].)  Attempted murder carries a different punishment from murder and has different elements that must be proven.  "If the two groups are not similarly situated or are not being treated differently, then there can be no equal protection violation."  (*Lopez, supra*, 38 Cal.App.5th at p. 1108.)

Defendants acknowledge that at least one case has concluded that treating attempted murder convictions differently from murder convictions for purposes of the ameliorative treatment under Senate Bill No. 1437 does not implicate Fourteenth Amendment rights.  (*Lopez, supra,* 38 Cal.App.5th at pp. 1107-1112.)  Nevertheless, they urge us to reach a different conclusion.  We cannot.

There is a fundamental difference between the completed crime of murder and the crime of attempted murder.  As the court observed in *Lopez,* "[the] distinction [between murder and attempted murder] is not merely a matter of semantics:  Murder and attempted murder are separate crimes."  (*Lopez, supra*, 38 Cal.App.5th at p. 1109, see *People v. Marinelli* (2014) 225 Cal.App.4th 1, 5 ["i]t is well established that "'"[a]n attempt is an offense 'separate' and 'distinct' from the completed crime"'"]; *People v. Lewis* (2006) 146 Cal.App.4th 294, 298 [same]; *People v. Reed* (2005) 129 Cal.App.4th 1281, 1283 [same].)  The penalties for murder and attempted murder also differ:  murder of either first or second degree is punished more severely than attempted murder.

11

(Compare § 190, subd. (a) [penalty for first and second degree murder] with § 664 [penalty for attempted murder and attempted willful, deliberate and premeditated murder]; *People v. Lopez, supra*, 38 Cal.App.5th at pp. 1109-1110.)

As pointed out in the previous section, the mental state required for attempted murder has long differed from that required for murder itself. Murder does not necessarily require the intent to kill. Implied malice--a conscious disregard for life--is sufficient. (*People v. Delgado* (2017) 2 Cal.5th 544, 571, citing *People v. Lasko* (2000) 23 Cal.4th 101, 107.) Further, malice may be implied from the commission of a dangerous felony without any showing of an intent to kill. (§ 189, subd. (a); *People v. Dillon* (1983) 34 Cal.3d 441, 475; *People v. Cavitt* (2004) 33 Cal.4th 187, 197.)

Murder is fundamentally different from attempted murder, so the defendants are not similarly situated with persons convicted of murder. Because Senate Bill No. 1437 sought to address the unfairness inherent in the situation in which a person could be convicted of murder without any intent to kill, based solely on his or her participation in a crime, the natural and probable consequence of which is the killing of another, it has no purpose in reviewing convictions of persons found to have specifically intended to kill another beyond a reasonable doubt.

Persons convicted of different crimes are not similarly situated for equal protection purposes. (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888, citing *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565.) Because murder and attempted murder are fundamentally different offenses, the defendants, convicted of attempted murder, are

12

not similarly situated with persons convicted of murder.  Therefore, there is no equal protection violation.

## DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

SLOUGH
J.